UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN AMOS LANE,                    )
                                  )
              Petitioner,         )
                                  )
       v.                         )        2:15-cv-00036-NT
                                  )
                                  )
SCOTT LANDRY,                     )
                                  )
              Respondent          )


**RECOMMENDED DECISION ON 28 U.S.C. § 2254 MOTION**

In this action, Petitioner John Amos Lane seeks relief, pursuant to 28 U.S.C. § 2254,

from his 1985 Maine state court conviction for murder.[1]   (Petition, ECF No. 1.)[2]

Respondent seeks dismissal of the petition.  (Response, ECF No. 15.)

Petitioner asserts that he is entitled to relief due to ineffective assistance of counsel.

In particular, Petitioner contends that trial and sentencing counsel (1) failed to move for a

finding that Petitioner was incompetent to stand trial; (2) failed adequately to investigate

and develop facts regarding Petitioner's experience with exorcism and rage; (3) failed to

obtain and use Petitioner's mental health records and records of a traumatic brain injury;

(4) failed to impeach the testimony of a state psychiatrist who opined that Petitioner was

not psychotic when he committed the crime, but who, after trial, treated Petitioner and

---

[1] The conviction was affirmed on appeal.  *State v. Lane*, 532 A.2d 144 (Me. 1987).

[2] Petitioner filed both a form petition (ECF No. 1) and an attachment (ECF No. 1-1).  Because Petitioner's argument is set forth entirely in the attachment, the attachment is referred to as the petition and references to "petition" are to ECF No. 1-1 unless otherwise indicated.

prescribed antipsychotic drugs; (5) failed to move for the preparation of a presentence investigation report; and (6) failed to object to the sentence. Petitioner also contends that his appellate counsel failed to file a petition for post-conviction review or failed to advise him about the availability of post-conviction review.

Petitioner failed to pursue timely a state court post-conviction review, and in response to the State's motion to dismiss the section 2254 petition as a late filing, Petitioner alleged that his failure was due to mental illness. Upon review of the motion to dismiss, the Court concluded that Petitioner had established a *prima facie* case for equitable tolling of the limitation period, and the Court ordered the State to address the merits. Pursuant to 28 U.S.C. § 2254(b)(2), which permits a habeas petition to be "denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," this recommended decision addresses the merits of Petitioner's various allegations under the standard, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for claims of ineffective assistance of counsel.

After a review of the petition and the State's request for dismissal on the merits, I recommend the Court grant the State's request, and dismiss the petition.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted of murder following a two-week bench trial in 1985.[3] (State Court Record ("Record"), ECF No. 5-1 at 33-38.) In its opinion affirming the

---

[3] Venue was transferred from Androscoggin County (No. CR-84-531) to Penobscot County (No. CR-85-631) by agreement of all parties. (State Court Record ("Record"), ECF No. 5-1 at 29, 31.) The court found Petitioner's co-defendant not guilty of the charge of manslaughter. (*Id.* at 40.)

judgment of conviction, the Maine Law Court summarized the relevant facts of the crime. *Lane*, 532 A.2d at 145.

On November 22, 1985, the state court sentenced Petitioner to life in prison. (*Id.* at 39.) By docket entry dated December 17, 1985, the court entered both counsel's motion to withdraw and the court's grant of the motion. (*Id.* at 40.) The order provided that new counsel was appointed "to represent [Petitioner] with regard to his appeal and any other post-trial matters which may arise." (*Id.*)

Petitioner appealed from the conviction and the sentence. (*Id.* at 41, 51.) The appeal from the sentence was dismissed for lack of jurisdiction. (*Id.* at 44.) According to the Law Court docket sheet, Petitioner had three successive attorneys over the course of the appeal from the conviction. (*Id.* at 52.) The Law Court affirmed the conviction. *Lane*, 532 A.2d at 144. (Record at 48.) Addressing Petitioner's contention that the evidence supported his argument that he lacked criminal responsibility, the Law Court, citing the version of the statute applicable when Petitioner committed the crime, noted that "[t]he burden is on defendant to prove by a preponderance of the evidence that he lacked criminal responsibility." *Lane*, 532 A.2d at 145 (citing 17-A M.R.S. § 39(1) (1983)).[4] The Court explained the statutory requirements of the affirmative defense:

---

[4] At the time of the offense, 17-A M.R.S. § 39 provided:

> 1.     A defendant is not criminally responsible if, at the time of the criminal conduct, as a result of mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct. The defendant shall have the burden of proving, by a preponderance of the evidence, that he lacks criminal responsibility as described in this subsection.

The statutory test for lack of criminal responsibility requires a finding of a mental disease or defect, as defined in 17-A M.R.S.A. § 39(2), and a finding that, as a result of the mental disease or defect at the time of the conduct, defendant either lacked substantial capacity to conform his conduct to the requirements of the law or lacked substantial capacity to appreciate the wrongfulness of the conduct. 17-A M.R.S.A. § 39(1). The Superior Court found that defendant established the existence of mental disease and defect but failed to establish the remaining requirement by a preponderance of the evidence.

*Id.* The Law Court observed that the trial court

framed its findings of the defendant's state of mind at the time of the offense in terms of the following three alternative hypotheses offered by expert testimony: one, defendant played out a role as an exorcist or one of similar identity, but he retained capacity to appreciate social standards and expectations; two, defendant acted on the basis of escalating rage and desire to punish, but he retained capacity to appreciate social standards and expectations; and three, defendant was psychotic at the time of the offense and acted on delusional beliefs that he and his family group faced imminent destruction, and he lacked capacity to appreciate social standards and expectations. The Superior Court found that the evidence was consistent with either of the first two hypotheses. Although the court explicitly found that the same evidence was not inconsistent with the third hypothesis, the court concluded that it was at least as likely that defendant played out the role of an exorcist or acted on the basis of escalating rage and a desire to punish and retained the capacity to appreciate the wrongfulness of his conduct.

*Id.* The Law Court, noting that the issues were factual, concluded: "Although defendant's

expert witnesses testified that defendant was psychotic at the time of the offense, the

experts offered by the prosecution testified that it was more probable that defendant was

---

2.     As used in this section, "mental disease or defect" means any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs the processes and capacity of a person to control his actions. An abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect.

Title 17-A M.R.S. § 39 has since been amended. *See* P.L. 2005, ch. 263, §§ 5, 6.

playing out the role of an exorcist or acting in rage, retaining the ability to appreciate the wrongfulness of his conduct." *Id.* at 145.

The Law Court issued its decision on October 13, 1987. *Id.* at 144. Petitioner did not seek a writ of certiorari, nor did he file an application for state court post-conviction review. According to the docket sheet, Petitioner did not request any relief from the Court until 1989 when he filed a motion to obtain exhibits. (Record at 49.) The docket sheet reflects that Petitioner filed the motion, and trial counsel, who had previously withdrawn as counsel, acknowledged receipt of certain exhibits. (*Id.* at 50.)

The docket sheet reflects no further activity until the trial court issued an order in August 2009 after Petitioner asserted that "he would like to pursue a second appeal." (*Id.*) The court noted that Petitioner's request "may not be frivolous," and it ordered the appointment of counsel for the limited purpose of advising Petitioner "as to whether he has any available legal recourse regarding this case and if so what it is." (*Id.*) The court permitted counsel or Petitioner to request an expansion of the representation if counsel concluded that Petitioner had a valid claim. (*Id.*) Counsel was appointed, but there was no further court action on Petitioner's request. (*Id.*)

In August 2014, Petitioner, through a motion filed in state court, requested the case file. (*Id.*) The court denied the request. (*Id.*) In September 2014, Petitioner filed an application to the Law Court for leave to appeal the sentence. (*Id.*) The same month, the Sentence Review Panel dismissed the appeal as untimely. (*Id.*)

Petitioner alleges that he placed the form section 2254 petition into the prison mailing system on January 19, 2015. (Petition, ECF No. 1 at 16.) The petition was filed with the Court on January 23, 2015. (*Id.* at 1.)

In response to the petition, Respondent moved to dismiss on grounds that the petition was not timely filed. (Response, ECF No. 5.) Petitioner argued that due to mental illness, he was entitled to equitable tolling of the limitation period. (Reply, ECF No. 6.) The Court concluded that Petitioner had established a *prima facie* case for equitable tolling; the Court thus denied Respondent's motion to dismiss. (Recommended Decision, ECF No. 8; Order Affirming, ECF No. 10.) The Court noted that if Petitioner was not entitled to relief on the merits, the timeliness issue would be moot. (Recommended Decision at 11 n.9.) Respondent contends that Petitioner is not entitled to relief on the merits.[5] (Response, ECF No. 15 at 4-8.)[6]

## II. DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

---

[5] Respondent has not waived its procedural arguments, which are that (1) the petition was not filed timely; and (2) the claims are procedurally defaulted because Petitioner failed to exhaust the claims in state court. (Responses, ECF No. 5 at 4, ECF No. 15 at 1 n.1.)

[6] For purposes of this recommended decision, references to "Response" are to the Respondent's response on the merits, ECF No. 15, unless otherwise indicated.

Petitioner concedes that he failed to exhaust his state court remedies, which failure he attributes to mental illness.  (Petition at 5.)  Section 2254 provides that a court may deny habeas relief to a petitioner who has failed to exhaust, on a timely basis, the available state court remedies.  *See* 28 U.S.C. § 2254(b), (c).[7]  Alternatively, however, a court may deny a petition on the merits, notwithstanding the petitioner's failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).  *See Ware v. Dickhaut*, 439 F. App'x 14, 14 (1st Cir. 2011) (per curiam) (unpublished) ("We bypass the question of whether the petitioner . . . exhausted his federal due process claim in the state courts, and we affirm the denial of his claim on the merits.")  (citing 28 U.S.C. § 2254(b)(2)).  Because Petitioner has presented a *prima facie* case to support failure to exhaust state court remedies, judicial economy

---

[7] Title 28 U.S.C. § 2254(b) and (c) state:

   **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

   **(A)** the applicant has exhausted the remedies available in the courts of the State; or

   **(B)** **(i)** there is an absence of available State corrective process; or

      **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

   **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

   **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

   **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

militates in favor of a review of the merits of the case before proceeding further on the equitable tolling issue.

In *Strickland*, the Supreme Court set forth the federal constitutional standard by which claims of ineffective assistance are evaluated; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697.

The Court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696.

As to claims that were resolved in state court with a decision on the merits, the federal court applies a deferential standard of review, pursuant to 28 U.S.C. § 2254(d). *See*

*Dugas v. Coplan*, 428 F.3d 317, 343 (1st Cir. 2005). However, when, as here, there is no state court post-conviction decision to review, a federal court that does not dismiss on procedural grounds, such as failure to exhaust, reviews the merits of the *Strickland* claims *de novo*. *See id.* (holding that because the state court did not reach the issue of *Strickland* prejudice, the Court would review the claims *de novo*).

### B. Grounds Asserted and Analysis

#### 1. Failure to move for a finding that Petitioner was incompetent to stand trial

Petitioner alleges that trial counsel's performance was deficient based on the failure to move the court to find Petitioner incompetent to stand trial; Petitioner asserts that such a motion was warranted based on a psychiatrist's report that Petitioner exhibited signs of "persistent psychosis" before trial. (Petition at 10.) Petitioner also contends that counsel should have moved to delay the trial until Petitioner was psychiatrically stabilized; he asserts that if counsel had done so, Petitioner would have sought to obtain mental health records and records of his traumatic brain injury. (*Id.*)

Respondent concedes and the record reflects that counsel did not move to find Petitioner incompetent to stand trial. Respondent, however, argues that Petitioner has presented no evidence to support the claim of either deficient performance by counsel, or prejudice. (Response at 6.)

In early November 1984, i.e., shortly after Petitioner was charged with the crime, the state court ordered the evaluation of Petitioner for competence to stand trial and criminal

responsibility, pursuant to 15 M.R.S. § 101.[8]  (Response at 6; Appendix to Appellant's Brief on Appeal.)  The record includes a psychiatric report co-signed by a clinical psychologist with the Augusta Mental Health Institute (AMHI) Forensic Service and the clinical director of the AMHI Forensic Service; the clinical psychologist and the medical director evidently conducted the evaluation.  (*Id.*)[9]

According to the report, Petitioner was examined during private interviews on five occasions from October 1984 to June 1985.  (*Id.*)  The report contains the following summary of the results of a competency examination conducted in February 1985:

Results of Competency Examination:

> The defendant was examined for competency to stand trial on February 1, 1985 by means of an interview schedule called the Competency Assessment Instrument.  His responses indicate that he is aware that he is charged with first degree murder and he was under the impression that he could receive a maximum sentence of 20 years in prison if found guilty of this charge.  He feels his chances of being found not guilty are "50-50", although he acknowledged that if the results are based on people's emotions, he would be definitely convicted.  He acknowledged that there is a strong case against him in terms of the physical evidence.  He indicated an understanding of the type of deportment which is required in a court of law. He indicated a clear understanding of the roles of the major participants in a criminal trial.  His understanding included a clear appreciation of the adversarial nature of the criminal trial process.  He identified his attorney by name and expressed confidence in him.  He indicated that he trusted his attorney "as much as anybody else in the world," adding, however, that he had little trust in anyone.  He indicated an understanding of the pleading alternatives available to him and appeared to understand the essential significance of the insanity defense and of the plea bargaining strategy.  He indicated motivation to be exonerated of the charges or to be found innocent by reason of insanity with the consequence of hospitalization at [the Augusta

---

[8] Title 15 M.R.S. § 101 has since been repealed.  P.L. 1987, ch. 402, § A, 107.  Competency and criminal responsibility evaluations are now conducted pursuant to 15 M.R.S. § 101-D.

[9] It appears the copy of the Augusta Mental Health Institute (AMHI) Forensic Service report included in Petitioner's appendix to the brief on appeal was labeled "Defendant's Exhibit #27."

Mental Health Institute] as opposed to incarceration at the state prison, which he fears greatly.

It may be inferred from the foregoing that the defendant appreciates his jeopardy due to charges against him, [possesses] an adequate understanding of procedures involved in a criminal trial, and is capable of assisting his attorney in terms of making choices among pleas and possible defense strategies. A judicial finding of competent to stand trial is recommended to the court.

(*Id.*)

A second report, set forth in the appendix to Petitioner's brief on appeal, also concludes that Petitioner was competent to stand trial.[10] The report states: "Mr. Lane understands the nature of the charges and the potential legal consequences. He is capable of assisting his attorney in the preparation of his defense. Mr. Lane, thus, appears competent to stand trial." (Appendix to Appellant's Brief on Appeal.)

Petitioner's section 2254 claim is based on a third report, conducted by a psychiatrist who reviewed the records and examined Petitioner in October 1985.[11] (*Id.*) Although the examination was conducted approximately one year after Petitioner was alleged to have committed the crime and shortly before trial, the stated purpose of the examination was not to determine Petitioner's competence to stand trial, but rather to evaluate Petitioner's state of mind on the date of the offense. (*Id.*) The psychiatrist concluded:

John Lane suffers from a chronic, pervasive psychotic disorder which was present prior to October 27, 1984 and continues to the present.

. . .

I would conclude that, as a result of mental disease or deficit, John Lane was delusional and, on October 27, 1984, lacked substantial capacity to

---

[10] The second report included in Petitioner's appendix to the brief on appeal is labeled "Defendant's Exhibit #91."

[11] The third report included in Petitioner's appendix to the brief on appeal was labeled "Defendant's Exhibit #92."

appreciate the wrongfulness of his actions. In my medical opinion, this illness also substantially impaired his capacity to conform his behavior to law.

(*Id.*) Contrary to Petitioner's argument, the psychiatrist's report does not support Petitioner's contention that he was incompetent to stand trial. In fact, the psychiatrist's report did not address the competency issue.

In short, Petitioner's ineffective assistance claim fails because the court ordered a competency evaluation, and Petitioner has failed to demonstrate that it "was inaccurate or untrustworthy." *Hurick v. Woods*, --- F. App'x ---, ---, No. 16-1554, 2016 WL 7093988, at *4, 2016 U.S. App. Lexis 23470, at *11 (6th Cir. Dec. 5, 2016) (order denying certificate of appealability); *Jermyn v. Horn*, 266 F.3d 257, 302 (3d Cir. 2001) (concluding that the petitioner had "not met his burden of demonstrating . . . that counsel was ineffective because he should have pursued the competency matter further than he did). Petitioner, therefore, has failed to demonstrate either deficient performance by counsel or prejudice.

## 2. Failure adequately to investigate and develop facts regarding Petitioner's experience with exorcism and rage

Petitioner alleges ineffective assistance regarding the asserted defense that he was not criminally responsible due to mental illness. (Petition at 6.) Specifically, Petitioner contends that trial counsel failed to interview the State's expert witnesses, lay witnesses, or Petitioner, in order to prepare a response to the State's theory of the case that Petitioner "was either performing an exorcism on the victim's mother by harming the victim, or that he was acting in a rage for unexplained reasons." (*Id.*) Petitioner maintains that due to counsel's substandard preparation, the State's theories were unchallenged. (*Id.* at 6-7.)

Respondent argues that the trial transcript reflects that counsel had reviewed pertinent discovery material, including doctors' reports and mental health records, and that counsel's examination of witnesses at trial regarding the issues of exorcism and rage was adequate. (Response at 6.)

Whether Petitioner at the time of the crime was psychotic, or whether he was acting out a role of exorcist or acting in rage, was an issue of fact at trial. The statutory defense requires a defendant to prove he "lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct," pursuant to 17-A M.R.S. § 39(1).

The Law Court's decision on appeal establishes, as a matter of fact entitled to the presumption of correctness under section 2254(e)(1), that Petitioner's counsel offered expert testimony that Petitioner was psychotic when he committed the offense. *See Lane*, 532 A.2d at 145. The Law Court noted, however, that the trial court as factfinder found that the preponderance of the evidence established that Petitioner was not psychotic, but rather had played the role of exorcist or acted on the basis of escalating rage. *Id.*

The record establishes that counsel appropriately raised the criminal responsibility defense, and that counsel presented relevant evidence in support of the defense. The fact the defense was unsuccessful does not render counsel's performance deficient. *See Strickland*, 466 U.S. at 699 (concluding that "there can be little question, even without application of the presumption of adequate performance, that trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment"). Petitioner has demonstrated neither deficient performance of counsel, nor prejudice. The claim thus fails.

### 3. Failure to obtain and use Petitioner's mental health records and records of a traumatic brain injury

Petitioner alleges that trial counsel made only "negligible efforts" to obtain Petitioner's mental health records, and that counsel made no effort to obtain records of Petitioner's traumatic brain injury. (Petition at 9.) Petitioner does not identify any specific records that counsel failed to obtain, but he alleges generally that additional records would have aided the impeachment of the State's expert psychiatrist, would have supported a finding that Petitioner was not criminally responsible, and would have supported mitigation at sentencing. (*Id.* at 9-10.) Respondent contends the trial transcript reveals that Petitioner's counsel obtained Petitioner's mental health records, and that counsel's examination of witnesses at trial regarding the mental health issues was adequate. (Response at 6.)

In response to defense counsel's questions, the state forensic psychiatrist testified that he went over the following documents to prepare to testify: a "clinical services committee" document; an "initial community report;" various Marine Corps records, including a chronological record of medical care; medical records, including psychological reports, a report of a brain scan, and an assessment of past head injuries, from the Veterans Administration Hospital at Togus; medical records from the Franklin Memorial Hospital for a suicide attempt; medical records from St. Mary's General Hospital; 1983 records from Tri-County Mental Health Service; 1984 Social Security disability application documents, including psychiatric and psychological reports; 1980 and 1981 child protective services intake notes regarding the mother of the victim; police and investigative reports for the

crime; and a videotaped interview of Petitioner on the day Petitioner was alleged to have committed the crime.[12]  (Trial Tr. at 1232-61, 1279.)[13]

Petitioner's claim is unsupported by any facts.  Petitioner has not identified any specific records that counsel failed to obtain, nor has Petitioner alleged how he was prejudiced by the absence of any particular records.  Furthermore, the record contains testimony from the forensic psychiatrist that the many documents he reviewed were of the type regularly used by doctors to evaluate a patient's condition.  (Trial Tr. at 1260-61.) Petitioner thus has failed to offer evidence of either deficient performance by counsel, or prejudice.

### 4.  Failure to impeach the testimony of the State's psychiatrist

Petitioner alleges that trial counsel failed to impeach the State's psychiatrist through evidence that the psychiatrist opined, based on his forensic evaluation, that Petitioner was not psychotic at the time of the crime, but the same psychiatrist later treated Petitioner with antipsychotic drugs.  (Petition at 7-8.)

The expert testified that, in his opinion, Petitioner was not psychotic when he committed the offense.  (Trial Tr. at 1293.)  The section 2254 petition does not allege when the psychiatrist first prescribed antipsychotic drugs for Petitioner; however, in Petitioner's 2009 request for court review, he states that the expert prescribed an antipsychotic drug

---

[12] The expert testified that reports relating to the mother of the victim were relevant to Petitioner because the reports also contained information about Petitioner's behavior and his condition.  (Trial Tr. at 1264.)

[13] The portion of the state court record that contains the trial transcript and briefs on appeal was filed in paper in four volumes.  ECF No. 16 (noting filing in paper form).

less than a month after the trial.[14]  (Record, Lane Letter of July 10, 2009.)  Petitioner states that he refused the medication.  (*Id.*)

Even if relevant treatment records were available, the fact that after trial the psychiatrist prescribed an antipsychotic drug would not suggest counsel was deficient at trial, because the information was not available at trial.  Indeed, the fact that Petitioner was not psychotic at the time of the offense does not preclude Petitioner's need for antipsychotic medication many months later.  Finally, based on the psychiatrist's trial testimony and Petitioner's allegations, it is reasonable to infer that the role of the psychiatrist changed from forensic expert before and during the trial, to treating psychiatrist after the trial.  (Trial Tr. at 1232, 1272, 1275, 1298, 1301; Record, Lane Letter of July 10, 2009.)

In short, counsel's performance was not deficient, nor was Petitioner prejudiced, based on a failure to attempt to impeach the expert with facts that developed after the trial, or with facts that, in any event, were not necessarily inconsistent with the expert's conclusions at trial.

### 5.  Failure to move for the preparation of a presentence report

Petitioner alleges that trial counsel failed to move for the preparation of a presentence report, and, had counsel done so, Petitioner may have received a shorter sentence; Petitioner also argues that appellate counsel should have objected to the lack of

---

[14] The expert testified that he saw Petitioner three times between October 1984 and June 1985; the expert's testimony indicates that during that time and through the trial, he served as a forensic expert, not as a treating physician.  (Trial Tr. at 1232, 1272, 1275, 1298, 1301.)

a presentence report.  (Petition at 11-12.)  Petitioner contends that the failure to request a presentence report in Petitioner's case should be considered ineffective assistance "on its face."  (*Id.* at 11.)

Counsel said:  "I see no reason for a presentence report, your Honor.  I think there's enough – more evidence before the Court than a presentence report would provide."  (Trial Tr. at 1696.)  The Court concluded:

> I agree with that, and it would not be my intention to ask for a presentence report for exactly that – that reason.  I think that I probably know more about Mr. Lane through the course of the trial and the evidence presented than any presentence report could possibly give me.

(*Id.*)

Counsel's decision not to request a presentence report was "well within the range of professionally reasonable judgments," as counsel provided the reason for his decision, and the court agreed with counsel's reasoning.  *Strickland*, 466 U.S. at 699.  The Maine Law Court has noted that a presentence report serves "to bring to the attention of the court factual information about the convicted person as may assist the court" in sentencing the convicted person.  *State v. Dyer*, 371 A.2d 1079, 1084 (Me. 1977).  The information may include "his background, the environment from which he comes, his past behavioral pattern of conduct showing his inclinations or tendencies and his mental approach to societal problems."  *Id.*  In *Dyer*, the Law Court held that the trial court did not abuse its discretion when it did not request a presentence report, because the trial court had already obtained, from hearing the expert testimony at trial, "as complete a picture of all the circumstances

surrounding the offense and the defendant" as would be provided through a presentence investigation. *Id.*

The record reflects the Court received extensive evidence about Petitioner during the trial. Insofar as Petitioner's history and his mental health issues were discussed at length at trial, it is difficult to conceive of any additional, relevant information that would have been generated by a presentence report. Petitioner, therefore, has failed to demonstrate deficient performance by either trial or appellate counsel based on the failure to object to the lack of a presentence report, nor has he proven prejudice.[15]

### 6. Failure to oppose/challenge the sentence

Petitioner alleges that both trial and appellate counsel failed to object to the sentence. (Petition at 11-12.) Specifically, he argues that trial counsel, at sentencing, failed to advocate adequately for mitigation based on mental illness, and counsel failed to appeal from the sentence. (*Id.* at 11-12.)

Petitioner has presented no evidence to support his contention that trial counsel did not argue adequately for a mitigation of Petitioner's sentence based on Petitioner's mental illness. His argument regarding trial counsel's performance at sentencing, therefore, is

---

[15] Petitioner argues that the failure to request a presentence report constitutes deficient performance "on its face." (Petition at 11.) The First Circuit has recognized that certain circumstances, not present here, may constitute a "'per se' violation of the Sixth Amendment" right to effective assistance of counsel, such that prejudice need not be proven. *United States v. Torres-Rosario*, 447 F.3d 61, 64 (1st Cir. 2006) (holding that proof of an actual conflict of interest of counsel may give rise to a right to relief, without the need to prove prejudice, on a claim of ineffective assistance) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980)). Because Petitioner has not alleged, and the record does not reflect, a conflict of interest as to either the failure to request a presentence report, or, for that matter, as to any of Petitioner's other claims, this reasoning is inapplicable.

unavailing and requires no further discussion. Petitioner's contention that counsel failed to challenge the sentence on appeal, however, warrants some discussion.

Petitioner was sentenced on November 22, 1985. (Docket sheet, ECF No. 5-1 at 39.) On December 17, 1985, the court entered an order granting trial counsel's motion to withdraw; it is not clear when counsel filed the motion to withdraw. (*Id.* at 40.) The court ordered that trial counsel be relieved "for purposes of all post-trial matters." (*Id.*) On the same date, the court appointed appellate counsel. (*Id.*)

On December 20, 1985, Petitioner, presumably through appellate counsel, filed a motion for enlargement of time to file a notice of appeal from the conviction, and on December 23, 1985, Petitioner filed a motion for enlargement of time to file an appeal from the sentence. (*Id.* at 41.) On January 6, 1986, the trial court granted the motion for enlargement of time to appeal from the sentence. (*Id.* at 42.) On January 17, 1986, the Appellate Division dismissed the appeal from the sentence for lack of jurisdiction. (*Id.* at 44.)

On this record, it is difficult to discern the reasons an appeal from the sentence was not pursued. Nevertheless, the Court can resolve Petitioner's ineffective assistance claim based on the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Simply stated, Petitioner was not prejudiced from the lack of an appeal from the sentence.

When Petitioner was sentenced in 1985, the court relied on the factors set forth in *State v. Anderson and Sabatino*, Nos. 78-37, 78-40 (Me. App. Div. June 30, 1980), to

determine whether a life sentence was justified for the crime of murder. *See State v. Shortsleeves*, 580 A.2d 145, 149-50 (Me. 1990) (discussing the factors that justify a life sentence under *Anderson and Sabatino*). One of the factors was "'[m]urder accompanied by torture, sexual abuse or other extreme cruelty inflicted upon the victim.'" *Id.* at 150 (quoting *Anderson and Sabatino*). The Law Court quoted from *Anderson and Sabatino*:

> "It is not our intention to suggest that life imprisonment must always be imposed in cases of the types enumerated above. Such an approach was abandoned by our legislature when it repealed the mandatory sentence of life imprisonment for first-degree murder. Even in these circumstances there may be mitigating factors which in the exercise of a sound judicial discretion may cause a presiding Justice to impose a sentence for a term of years rather than life imprisonment . . . . It is our intention to suggest that under the present formulation of our Criminal Code life imprisonment is not justified in the absence of one of these enumerated circumstances."

*Shortsleeves*, 580 A.2d at 150 (quoting *Anderson and Sabatino*).

The facts of the crime in this case unquestionably supported a finding that Petitioner committed the offense with extreme cruelty. *See Shortsleeves*, 580 A.2d at 147, 150 (describing the facts of the case and holding that the sentencing court did not err in finding that the defendant committed the murder with extreme cruelty). Any argument to the contrary would be meritless. Upon conviction, a life sentence was clearly supported by the record and unassailable on any appeal.

Regardless, therefore, of whether counsel failed to file timely a sentencing appeal, Petitioner has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," i.e., that Petitioner would have received something less than a life sentence. *Strickland*, 466 U.S. at 694. Because Petitioner has failed to demonstrate prejudice, the claim fails.

### 7. Failure to advise Petitioner about or to file for post-conviction review

Petitioner alleges that appellate counsel failed either to advise him about or to file for state court post-conviction review, despite counsel's knowledge that Petitioner suffered from psychosis and was not capable of filing the petition. (Petition at 12-13.) Petitioner essentially argues that ineffective assistance of appellate counsel excuses Petitioner's procedural default, i.e., his failure to exhaust his state court remedies. (*Id.*)

In *Coleman v. Thompson,* 501 U.S. 722 752 (1991), the Supreme Court held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." In *Martinez v Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to its holding in *Coleman*, when it held, as a matter of equity rather than constitutional law, that ineffective assistance of post-conviction counsel may excuse a procedural default of a substantial claim of ineffective assistance of counsel at trial. *Martinez*, 566 U.S. at 9. The Supreme Court has granted certiorari in *Davila v. Davis*, 650 F. App'x 860 (5th Cir. 2016) (per curiam) (unpublished), to decide the following question:

> Does the rule established in [*Martinez*] and *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013), that ineffective state habeas counsel can be seen as cause to overcome the procedural default of a substantial ineffective assistance of trial counsel claim, also apply to procedurally defaulted, but substantial, ineffective assistance of appellate counsel claims?

*Davila v. Davis*, 137 S. Ct. 810 (2017) (quoting the question to which the grant of certiorari was limited).

Assuming, arguendo, that the *Martinez* rule applies to appellate counsel,[16] key to Petitioner's claim against appellate counsel is that the procedurally defaulted claims against trial counsel must be substantial; "[t]o overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. As explained herein, Petitioner's ineffective assistance claims against trial counsel fail on the merits. The claims thus are not substantial as required under *Martinez*. *See id.*[17] Because the claims against trial counsel are not substantial, the procedural default claim against appellate counsel also fails.

## III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend that the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. section 2254, and that the Court deny

---

[16] If the rule in *Martinez v. Ryan*, 566 U.S. 1 (2012), applied, and if Petitioner were successful on his ineffective assistance of appellate counsel claim, Petitioner would overcome the procedural default resulting from his failure to exhaust the available state court post-conviction remedies. As a result, Petitioner would be permitted to assert the claims he has asserted herein. In this recommended decision, in accordance with 28 U.S.C. § 2254(b)(2), which permits a habeas petition to be "denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," I recommend the Court dismiss the petition on the merits. Petitioner's ineffective assistance of appellate counsel claim, therefore, is essentially moot. However, because Petitioner raised the argument, I address it separately.

[17] In *Gunner v. Welch*, 749 F.3d 511, 520 (6th Cir. 2014), the Sixth Circuit held that appellate counsel's failure to provide the petitioner with information about filing a post-conviction motion "amounted to ineffective assistance of appellate counsel and thus constitutes sufficient cause to excuse the procedural default." The Court found prejudice on the basis that the petitioner "adequately alleged that there is a reasonable probability that, but for appellate counsel's failure, he would have timely filed a petition for post-conviction relief." *Id.* at 516 n.1. Because *Gunner* is a Sixth Circuit case, because it is in large part based on Ohio law, and because in *Gunner*, the Court appears to require only a showing that the petitioner would have filed a post-conviction petition, not a showing that the underlying ineffective assistance claims against trial counsel have merit, the *Gunner* analysis is unpersuasive.

a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254

Cases because there is no substantial showing of the denial of a constitutional right within

the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 12th day of April, 2017.